# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **AMY STETSON SMITH,** | * |
| Plaintiff | * |
| v. | *    CIVIL NO. JKB-10-3064 |
| **ALACRITY SERVICES, LLC,** | * |
| Defendant | * |

## MEMORANDUM

Plaintiff Amy Stetson Smith filed this putative class-action lawsuit against Defendant Alacrity Services, LLC, asserting in count one a claim under the equitable theory of money had and received and in count two a claim under the equitable theory of unjust enrichment. (Compl. ECF No. 1.) Alacrity's motion for summary judgment has been briefed by the parties (ECF Nos. 7, 13, 14), and no hearing is necessary, Local Rule 105.6. Defendant's motion will be granted.

## *I. Background*

Smith, a resident of Baltimore, Maryland, experienced a fire at her home in October 2007. (Compl. ¶¶ 13, 30.) She made a claim with Allstate Insurance Company, her insurer, and the damage was assessed at approximately $36,000. (*Id.* ¶ 31.) Alacrity operates an insurance services business from its principal place of business in Oregon. (*Id.* ¶ 12.) Alacrity maintains a network of contractors, called "AlacNet," consisting of roughly 1,400 contractors across the country. (*Id.* ¶ 6.) Allstate turns to AlacNet when in need of a local contractor to perform repair work under a home insurance contract. (Def.'s Mot. Summ. J., Ex. C, Miko Aff. ¶ 7, ECF No. 7.) The local contractor selected through AlacNet is directed to contact the homeowner, and

if the insured agrees to use the contractor's services, then the contractor prepares an estimate to be submitted to Allstate for approval. (*Id.* ¶¶ 7, 8.) If Allstate approves the estimate, then it deposits the agreed-upon amount into an account to be managed on Allstate's behalf by Alacrity. (*Id.*) Alacrity supervises the contractor's "draws" on the account and confirms completion of the work to Allstate; the insured is asked to sign a Certificate of Satisfaction. (*Id.* ¶ 9.)

The AlacNet contractor utilized for the repairs to Smith's home was Mid-Atlantic Restoration, LLC, t/a Paul Davis Restoration – Chesapeake Bay ("PDRCB"). (*Id.* ¶ 12.) PDRCB is a franchise of Paul Davis Restoration, a national company engaged in construction work, focusing primarily on restoration from fire, floods, and other damage to real property. (Compl. ¶ 33.) Smith signed a "Work Authorization / Repair Contract" with PDRCB. (Def.'s Mot. Summ. J. Ex. A.) Paragraph five provided in part,

> Owner's insurance company is Allstate and Owner authorizes them [sic] to pay all proceeds due to PDR[CB] under Owner's insurance policy directly to PDR[CB] or to include PDR[CB]'s name on the check or draft for services performed.

(*Id.*) Smith does not indicate she was charged anything by PDRCB. It may be inferred, then, that Allstate paid for all repairs to her home. Smith did not pay any monies to Alacrity. (*Id.* Ex. C, Miko Aff. ¶ 14.)

On October 18, 2008, Smith executed a Certificate of Satisfaction, which provided *inter alia*,

> I hereby certify that such repairs and restoration to the subject premises performed by Paul Davis Restoration – CBMD have been satisfactorily completed in a professional and workman-like manner, and the portions of the premises repaired by Paul Davis Restoration – CBMD are in as good or better condition than existed prior to the above stated loss. To the best of my knowledge and belief, no problems or complaints exist regarding such repairs. . . .

> In the event a problem or complaint should develop in the future, I will notify the above mentioned contractor immediately in order that the contractor may inspect and correct the problem or complaint as necessary and appropriate considering the period of time since the repairs and the applicable warranties.

(*Id.* Ex. B.)

Alacrity was not a party to the contract between Smith and Allstate. (*Id.* Ex. C, Miko Aff. ¶ 17.) Smith was not a party to any contract between Alacrity and any of its member contractors. (*Id.* ¶ 4.) Nor was she a party to the contract between Alacrity and Allstate. (*Id.* ¶ 5.) Contractors who are members of AlacNet pay Alacrity for their membership; during the time of the events in Smith's case, this payment was computed to be 2.8% of any monies received by a member contractor resulting from referrals received through AlacNet. (*Id.* ¶ 3.) It is this payment to Alacrity that is at issue in this case.

## *II. Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a defendant's motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th

Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

## III. Analysis

In count one of Smith's complaint, the count asserting a claim for money had and received, she alleges that Alacrity "withheld for itself 2.8% of the total insurance claim owed by Allstate to Plaintiff and the other members of the Class without their knowledge and/or consent." (Compl. ¶ 48.) Thus, Smith further alleges, Alacrity "has come into the possession of Plaintiff and the Class' [sic] money, and has no right to it at law or in equity." (*Id.* ¶ 49.) Moreover, Smith asserts that Alacrity, "by keeping a portion of the funds for its own benefit, breached its standard of care and fiduciary duties to the Class members, who were thus injured by losing, without their knowledge or consent, 2.8% of the insurance proceeds to which they were entitled." (*Id.* ¶ 52.)

An action for money had and received has been described in the following manner by the Maryland Court of Appeals:

> The action for money had and received is a common count used to bring a restitution claim under the common law writ of assumpsit. We have stated that this count "lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain." A money had and received count may lie where the defendant receives the money as a mistake of law or fact and did not have a right to it.

*Benson v. State of Maryland*, 887 A.2d 525, 547 (Md. 2005) (citations omitted).

Given this definition of the cause of action, it is incumbent upon Smith to provide evidence that Alacrity received money as a mistake of law or fact and did not have a right to it.

4

She has not provided any evidence to this effect. Her theory seems to be that the money received by Alacrity from Allstate was money to which *she* was entitled. Such entitlement would arise only from the insurance contract between Smith and Allstate, but that contract is not before the Court, and the Court will not speculate as to its content. If she was in fact owed a particular amount of money by Allstate, then her complaint is really against Allstate, not Alacrity. But Smith has not established that Allstate owed her a sum certain, and her claim, that whatever Allstate paid third parties for repairs to her house was *her* money, rests on pure imagination.

In count two claiming unjust enrichment, Smith alleges:

> 55. By withholding 2.8% of the insurance settlement proceeds of the Named Plaintiff and the Class, a benefit was conferred on Alacrity, and Alacrity was aware of such benefit.
>
> 56. In justice and equity, the Named Plaintiff and the Class are entitled to the percentage of their insurance settlement proceeds that Alacrity withheld for itself.
>
> 57. Because Alacrity has no right to the percentage of the insurance settlement proceeds of the Named Plaintiff and the Class which it withheld for itself, it would be inequitable and unconscionable to allow Alacrity to retain such funds.

(*Id.*)

The elements of an unjust-enrichment claim were also set forth in *Benson*:

> (1) The plaintiff confers a benefit upon the defendant;
> (2) The defendant knows or appreciates the benefit; and
> (3) The defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return.

887 A.2d at 546.

The Maryland Court of Appeals discussed the nature of an unjust-enrichment claim in *Ver Brycke v. Ver Brycke*, 843 A.2d 758 (Md. 2004), and noted that a restitution claim for money is usually considered a claim "at law." *Id.* at 775. *See also Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000) ("'A person who receives a benefit by reason of an infringement of

another person's interest, or of loss suffered by the other, owes restitution to him in the manner and amount necessary to prevent unjust enrichment'" (citing Restatement (Second) of Restitution § 1 (Tentative Draft No. 1, 1983) (Tent. Restatement))).

As with count one, Smith has failed to provide any evidence to support her claim that Alacrity was unjustly enriched. Although it is undisputed that Alacrity was paid by Allstate, via PDRCB, for its services, Smith has not established that this payment infringed any interest of hers. The Court has already concluded that Smith has failed to establish an entitlement to a particular amount of money from Allstate. Alacrity, therefore, did not infringe any interest of Smith. She has alleged that, because she did not know about Alacrity's arrangement with Allstate and PDRCB, she "received significantly less in services and products" from PDRCB than the amount of her insurance claim. (Compl. ¶ 9.) To support that allegation, she has produced the affidavit of Christopher Bruneau, the only member of Mid-Atlantic Restoration, LLC, t/a "Paul Davis Restoration – Chesapeake Bay." (Pl.'s Opp. Ex. 2, ECF No. 13.) Bruneau stated that to account for the "insurance proceeds shortfall," he adjusted the material and labor allowances previously approved by Allstate. (*Id.* ¶ 15.vi.) He then stated that Smith "received 2.75% less materials, in terms of quantity, quality, or both, than that which she was entitled to receive." This statement, which comes remarkably close to an admission of misconduct by PDRCB, still does not establish a proper claim of unjust enrichment. Smith's claim of "entitlement" is, simply put, a product of someone's imagination. No doubt exists that she was entitled to have Allstate pay for repairs to her property. Allstate did so. But she has not established that she was entitled to a certain amount of money for those repairs. If her contractor used unsatisfactory materials, then her complaint is more properly directed against PDRCB. It must be remembered that she executed a certificate of satisfaction that indicated her home, in the

portion repaired by PDRCB, was as good as or better than it was before the fire. Alacrity was entitled to rely upon that certificate.

## IV. Conclusion

On the merits, Alacrity is entitled to summary judgment. Plaintiff has raised one other matter, however, that must be addressed. She has argued that deciding Alacrity's motion for summary judgment now is premature because she wants to take discovery so that she can "make a complete rebuttal to Alacrity's motion." (Pl.'s Opp. 1, ECF No. 13.) This contention is also without merit. Smith has submitted an affidavit of counsel to the effect that discovery is needed to establish her entitlement to all of the insurance proceeds paid by Allstate for repairs to her home. (*Id.* Ex. 1.) As pointed out earlier, any entitlement by Smith to a particular amount of insurance proceeds would only arise from her contract with Allstate, a document that is within her control and ability to produce. Further discovery is pointless.

A separate order will be entered reflecting the conclusions of this memorandum.

DATED this  20th  day of April, 2011.

BY THE COURT:

/s/
James K. Bredar
United States District Judge